**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2013-43

UNITED STATES TAX COURT

PETER H. HOFINGA AND MARGARET M. WONG, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21704-09S.               Filed June 3, 2013.

Shannon Gallagher, for petitioners.

Sebastian Voth, for respondent.

SUMMARY OPINION

CARLUZZO, Special Trial Judge:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated August 21, 2009, respondent determined deficiencies of $23,706 and $27,653 in petitioners' 2006 and 2007 Federal income tax, respectively.  The issue for decision for each year is whether petitioners are entitled to a deduction for a rental real estate loss.  The resolution of the issue depends upon whether Peter H. Hofinga (petitioner) is a taxpayer described in section 469(c)(7) for either year in issue.

## Background

Some of the facts have been stipulated and are so found.  At the time the petition was filed, petitioners resided in California.

Over the years after they married in 1982, petitioners purchased, and as necessary renovated and remodeled, residential real estate properties that they held for rent.  As of the close of 2006, petitioners owned eight rental properties; as of the close of 2007, petitioners owned nine rental properties (collectively, rental properties).  Because of an election they made for Federal income tax purposes,

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code of 1986, as amended, in effect for the year in issue.  Rule references are to the Tax Court Rules of Practice and Procedure.

petitioners' interests in the rental properties are treated as one activity. See sec. 469(c)(7)(A).

Before retiring in 1993 petitioner was employed as a soccer coach and professor of physical education by the University of California Irvine (UCI). He was not employed in any capacity during either year in issue. At all times relevant, Margaret M. Wong (Mrs. Wong) was also employed by UCI.

As between the two of them, petitioner was more responsible for the management of the rental properties. For the most part he did so from his den/office in petitioners' residence. Routinely and regularly he reviewed and paid various bills, considered and made arrangements for repairs, arranged for the purchase of supplies, reviewed rental applications, from time to time inspected a rental property for various reasons, and supervised and/or made the arrangements for renovating and remodeling a rental property when necessary. Neither petitioner, however, kept any sort of contemporaneous log or record that shows the amount of time either spent, or specific services either provided, with respect to any specific rental property on any specific date.

Petitioners also employed property managers for some of the rental properties. Routinely, the property managers were responsible for collecting rent, responding to inquiries or complaints from tenants, and making/supervising

repairs, the costs of which did not exceed a designated amount set by petitioners. In addition to the fees paid to the property managers, a review of petitioners' Federal income tax returns for the years in issue shows deductions for expenses attributable to the rental properties for cleaning, maintenance, gardening, pest control, plumbers, electricians, and commissions.

On their 2006 and 2007 Federal income tax returns, petitioners deducted losses of $111,042 and $141,133, respectively, attributable to the rental properties (rental property losses). If the rental property losses are not taken into account, then petitioners' adjusted gross income as reported on each of those returns would exceed $150,000.

The rental property losses are disallowed in the notice of deficiency. According to respondent's explanation, "[r]ental activities of any kind, regardless of material participation, are considered passive activities unless the requirements of section 469(c)(7) of the Internal Revenue Code are met in tax years beginning after December 31, 1993". According to respondent, those "requirements", which will be more fully discussed below, have not been "met". Other adjustments made in the notice of deficiency are computational and will not be discussed.

Discussion

The explanation for the disallowances of the rental property losses provided in the notice of deficiency includes terms of art, such as "material participation" and "passive activities", which are used and defined in section 469 and its corresponding regulations. In an article published in the October 24, 2011, edition of Tax Notes, Professor George S. Jackson states that section 469 contains "almost 4,500 words" (we did not count) and "exemplifies why federal tax law is incomprehensible for most citizens." George S. Jackson, "Passive Activity Limitations: Time for a New Paradigm?", 133 Tax Notes 447, 459 (2011). Describing section 469 as "incomprehensible" is probably an overstatement; that section, however, is hardly uncomplicated.[2] The dispute between the parties in this case, however, allows us to avoid a discussion of many of the complexities of section 469, and a summarization of the relevant provisions of that section is sufficient.

---

[2]Sec. 469 was enacted as part of the Tax Reform Act of 1986, Pub. L. No. 99-514, sec. 501, 100 Stat. at 2233, to prevent affected taxpayers from using deductions from a passive activity to shelter wages or other active income. See generally Staff of J. Comm. on Taxation, General Explanation of the Tax Reform Act of 1986, at 209-215 (J. Comm. Print 1987).

In general and as relevant here, an individual is not entitled to a deduction for a passive activity loss incurred during the taxable year. See sec. 469(a). A passive activity is any activity which involves the conduct of any trade or business in which the taxpayer does not materially participate. See sec. 469(c)(1). "Material participation" is defined generally in the statute and more specifically in the regulations. See sec. 469(h); sec. 1.469-5T, Temporary Income Tax Regs., 53 Fed. Reg. 5725 (Feb. 25, 1988).

In general, a rental activity is treated as a passive activity regardless of whether the taxpayer materially participates. See sec. 469(c)(2), (4). There are two exceptions to this general rule, each subject to a variety of limitations and conditions if the taxpayer's rental activity is a real estate rental activity. One of those exceptions, which allows a limited deduction if a taxpayer actively participates in the rental real estate activity, is not relevant here because petitioners' adjusted gross income, as that term is defined in section 469(i)(3)(F), exceeds $150,000 for each year in issue. See sec. 469(i)(2) and (3)(A).

The relevant exception is found in section 469(c)(7). If a taxpayer is described in that section (sometimes that taxpayer is referred to as a "real estate professional"), then section 469(c)(2) does not apply and the taxpayer's rental real estate activity, if conducted as a trade or business or for the production of income,

is not treated as a passive activity if the taxpayer materially participates in the activity. Sec. 469(c)(1); <u>Fowler v. Commissioner</u>, T.C. Memo. 2002-223; sec. 1.469-9(e), Income Tax Regs.

We need not get into the complicated definition of the term "material participation" set forth in section 469(h) and its corresponding regulations. Keeping that definition in mind, and because petitioners elected to treat the rental properties as a single activity, we are satisfied that they materially participated in the rental property activity during each year in issue, and respondent does not seem to suggest otherwise. Instead, the disagreement between the parties focuses on whether petitioner is a taxpayer described in section 469(c)(7).[3] According to petitioners, he is; according to respondent, he is not.

Section 469(c)(7) contains two tests that a taxpayer must satisfy to be described in that section. One requires that the taxpayer perform more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates. <u>See</u> sec. 469(c)(7)(B)(ii). The other requires that "more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates". <u>See</u> sec.

---

[3]Mrs. Wong does not claim to be a taxpayer so described.

469(c)(7)(B)(i).  Because petitioner was not otherwise employed during either year in issue, we need turn our attention only to the first test (the 750-hour test).

Ideally, a taxpayer who claims to be described in section 469(c)(7) would maintain a contemporaneous log or record showing with particularity the amount of time devoted to the rental real estate activity on an event-by-event basis.  See sec. 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988).  Ideally, the log would be detailed enough to allow for someone who reviewed it to make an informed judgment as to the accuracy of the information reported.  The creation and availability of a detailed log is important, especially if that reviewing "someone" is an Internal Revenue Service employee considering the log in connection with an examination of the taxpayer's return on which rental real estate losses are deducted.  Apparently, petitioners were not aware of the importance of keeping such a log and, as noted, neither kept a log during either year in issue.

Recognizing that many taxpayers might not be aware of the importance of keeping a contemporaneous log of time devoted to the taxpayer's rental real estate activity, the Commissioner's regulations provide a second-best alternative. Section 1.469-5T(f)(4), Temporary Income Tax Regs., supra, provides:

(4) Methods of proof. The extent of an individual's participation in an activity may be established by any reasonable means. Contemporaneous daily time reports, logs, or similar documents are not required if the extent of such participation may be established by other reasonable means. Reasonable means for purposes of this paragraph may include but are not limited to the identification of services performed over a period of time and the approximate number of hours spent performing such services during such period, based on appointment books, calendars, or narrative summaries.

Although petitioners did not maintain contemporaneous logs of the time devoted to their rental real estate activity, they tried to establish petitioner's participation by other reasonable means (e.g., noncontemporaneous logs based on petitioners' records) in compliance with section 1.469-5T(f)(4), Temporary Income Tax Regs., supra. During the examination of the years here in dispute, and in response to a request by the examining agent, Mrs. Wong prepared several sets of logs showing estimates of time spent on various events. According to Mrs. Wong, she used calendars, bank statements, credit card records, property trip files, bills, receipts, and other records to construct the logs. According to petitioners, these logs establish that petitioner has satisfied the 750-hour test. According to respondent, they do not. For the following reasons, we agree with respondent.

The estimates of time shown for some entries on the first set of logs Mrs. Wong prepared include a combination of time spent by both petitioners. For

purposes of the 750-hour test, however, only the hours petitioner spent are taken into account. See sec. 469(c)(7)(B). Having had this problem pointed out to her during the examination, she prepared a second set of logs using a generalized allocation of time spent by each of them. For the most part, she supported the allocation of time on the basis of the amount of time petitioner spent in his den/office at their residence.[4] The logs contain generalized entries such as:

| Address | Week of | Hours (Petitioner) | Hours (Mrs. Wong) | Description |
|---|---|---|---|---|
| All properties | 2/6/2006 | 8 | --- | Payment of bills, filing of bills, paperwork, monthly statement reviews, cross-checking, keeping in touch with property management companies |
| All properties | 2/13/2007 | 9 | 1 | Payment of bills, filing of bills, paperwork, monthly statement reviews, cross-checking, keeping in touch with property management companies |

---

[4]Petitioner's health prevented his appearance at trial. The trial was continued twice to allow for the possibility that his health would improve so that he could be called as a witness. But petitioner's health did not improve and, as it turned out, only Mrs. Wong testified on petitioners' behalf when the matter was tried. Her testimony as to what he was doing while in his den/office and out of her presence might very well have been objectionable under Fed. R. Evid. 602 and 802, see sec. 7453, but for petitioners' sec. 7463 election. Because this case is subject to that election, "evidence deemed by the Court to have probative value shall be admissible." See Rule 174(b). Probative value, however, does not necessarily equate to persuasive effect.

| All properties | 1/1/2007 | 9 | 1 | Payment of bills, filing of bills, paperwork, monthly statement reviews, cross-checking, keeping in touch with property management companies |
| --- | --- | --- | --- | --- |
| All properties | 1/8/2007 | 7 | 1 | Payment of bills, filing of bills, paperwork, monthly statement reviews, cross-checking, keeping in touch with property management companies |

On the other hand, some of the entries in the logs reference specific properties and provide a distinct description, such as:

| Address | Week of | Hours (Petitioner) | Hours (Mrs. Wong) | Description |
| --- | --- | --- | --- | --- |
| RPT-25 Park City | 1/2/2006 | 4 | --- | Discuss winter rentals, hot tub repair, roof repair |
| Miraflores | 4/3/2006 | 3 | --- | Walk-through inspection, assess patio cover, painting needs |
| 82401 Odlum | 4/23/2007 | 6 | --- | Work with handyman to identify repairs, window coverings, installation |

Although we expect petitioners, in their role of landlords, expended significant time during each year in issue providing services in connection with the rental properties, we are unable, from what has been submitted, to quantify the total time that petitioner spent doing so, and we cannot ignore the deductions attributable to others' providing management and maintenance services in connection with the rental properties. Simply put, the logs do not allow for a

review of activity related to the rental properties on an event-by-event basis to the extent necessary to establish that the 750-hour test has been satisfied.[5]

Petitioners have failed to establish that petitioner satisfied the 750-hour test for either year in issue; consequently, petitioner is not a taxpayer described in section 469(c)(7) for either of those years. That being so, petitioners' rental real estate activity is treated as a passive activity for both of those years. It follows that respondent's disallowances of the rental property losses attributable to that activity are sustained.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.

---

[5]Giving petitioners the benefit of the doubt, and keeping in mind the infirmities of time logs prepared after the fact, <u>see</u> <u>Moss v. Commissioner</u>, 135 T.C. 365, 369 (2010) (we are not required to accept a postevent "ballpark guesstimate"); <u>Bailey v. Commissioner</u>, T.C. Memo. 2001-296 (the regulations do not allow a postevent "ballpark guesstimate"), to the extent that the logs reference specific properties or events, at best they show that petitioner spent 379.5 hours during 2006 and 526 hours during 2007 performing services in connection with the rental properties.